AO 91 (Rev. 11/11) Criminal Complaint



CLERK'S OFFICE
A TRUE COPY
Apr 28, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Tomas M. Garcia DOB 12-28-1965 (a/k/a Tomas GARCIA-MARTINEZ)<br><br>*Defendant(s)* | )<br>)<br>) Case No. 25-M-404 (SCD)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **April 24, 2025** in the county of **Milwaukee** in the **Eastern** District of **Wisconsin**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) | Possession with intent to distribute controlled substances (Methamphetamine) |

This criminal complaint is based on these facts:

See Attached Affidavit

☒ Continued on the attached sheet.

*Complainant's signature*

Donald Gaglione Jr., FBI TFO
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: 4-28-25

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Stephen C. Dries
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Donald J Gaglione Jr, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Pursuant to my official duties, I am submitting this Affidavit in support of an application for a criminal complaint and arrest warrant, for violations of federal law, including violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) (Possession with Intent to Distribute Controlled Substances—Methamphetamine).

2. I am a Task Force Officer (TFO), with the Federal Bureau of Investigation and have been a federal TFO since 2021. I am employed as a Police Detective for the Milwaukee Police Department and am assigned to the Special Investigations Division, attached as a Federally Deputized Task Force Officer to the FBI's Milwaukee Area Safe Streets Task Force. I have worked full-time as a law enforcement officer since December of 2015. I have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location. As part of my assignment with the Milwaukee Area Safe Streets Task Force (MASSTF), I conduct investigations involving narcotics and weapons trafficking, and violent gangs.

3. As a federal task force enforcement officer, I have participated in the investigation of narcotic related offenses, resulting in the prosecution and conviction of

numerous individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacturing, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations including physical surveillance, execution of search warrants, undercover transactions, court ordered wiretaps, analysis of phone records, analysis of electronic devices, financial records informant handling and the arrest of numerous drug traffickers. I have authored many search warrants during my tenure as a law enforcement officer. I have also spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking – derived proceeds. I am aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activity.

4. Based on my training, experience, and conversations with other law enforcement officers, I know that the distributors of marijuana, cocaine, heroin, fentanyl, and methamphetamine as well as other controlled substances, often used cellular and landlines telephones. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity. I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled substances while talking on the telephone. I know drug traffickers often conduct extensive counter – surveillance to avoid law enforcement detection.

5. Based on my training and experience, I know that narcotic trafficking and money laundering organizations routinely used several operational techniques to sustain their illegal enterprises. There practices are designed and implemented to achieve two paramount goals: First, the successful facilitation of the organization's illegal activities including the importation and distribution of controlled substances and the subsequent repatriation of the proceeds of that illegal activity; and second, the minimization of the exposure of the coconspirators, particularly those operating in leadership roles, from investigations and prosecution by law enforcement. More specifically, based on training and experience, I know the following:

3

a. Sophisticated drug trafficking organizations routinely compartmentalize their illegal operations. The compartmentalization of the operations reduces the amount of knowledge possessed by each member of the organization. This method of operation effectively minimizes the potential damage an individual cooperating with law enforcement could inflict on the organization and further reduces the adverse impact of the particular law enforcement actions against the organization.

b. Members of these organizations routinely used communications facilities, such as cellular telephones to communicate directions and information about the organization's illegal activities to other organization members.

c. During the course of these telephonic communications, organization members routinely use coded references and encryption in an effort to elude law enforcement detection.

d. The communication of time sensitive information is critical to the successful conduct of these organizations' illegal activities. The critical nature of this information stems from the necessity of the organization's leadership to provide direction from the importation and distribution of narcotics and subsequent laundering of the proceeds of those activities.

e. Drug traffickers and money launderers associated with them often confine their illegal telephonic communications to long – trusted organizational members and high – level narcotics traffickers in an attempt to evade law enforcement and circumvent narcotics investigations;

f.  Drug traffickers routinely use fictitious names or other individuals to register pagers, telephones, vehicles, real property, and utility services to avoid detections from law enforcement; and

g.  Drug traffickers used what is refer to as a "stash house" to stow illegal items such as illegal controlled substance, packaging paraphernalia, illegal firearms, ledgers, and US currency. Oftentimes, members of drug trafficking organizations have to make stops at the stash locations to pick up illegal controlled substance to deliver. Multiple stops can be made in a day at these locations. This is done so the trafficker does not have to carry additional illegal controlled substances in their vehicle or person. This protects the trafficker from law enforcement investigations as they do not have illegal controlled substances on them after the delivery is made. Oftentimes, the US currency will be transported after the delivery to the stash house to protect against law enforcement investigation and rival drug trafficker's robbery crews.

6. Further, I am aware that vehicles are frequently used by drug and firearms traffickers to transport and store contraband. It is common for persons involved in drug trafficking to use vehicles to travel to stash locations, acquire drugs, and then use the vehicle to transport the drugs to a separate location. It is also common for drug traffickers to sell drugs inside of a vehicle and to engage in mobile drug trafficking.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States

5

Code, Sections 841(a)(1) and 841(b)(1)(A) (Distribution and Possession with Intent to Distribute Controlled Substances), have been committed, are being committed, and/or will be committed by Tomas GARCIA (DOB XX/XX/1965) (a/k/a Tomas GARCIA-MARTINEZ) in the Eastern District of Wisconsin. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against GARCIA.

8. The information set forth in this affidavit comes from my personal involvement in this investigation, along with information provided to me by other law enforcement officers. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

## PROBABLE CAUSE

9. The United States, including the FBI, is conducting a criminal investigation into methamphetamine trafficking by GARCIA in the Eastern District of Wisconsin.

10. On Thursday, April 24, 2025, Milwaukee Police observed a blue 2011 Chrysler 300 bearing a rear WI Registration Plate of ATC6109 traveling in the 1600 block of S. 13th Street with no license plate affixed to the front bumper, in violation of Wisconsin law.

11. A uniformed Milwaukee Police Officer, P.O. M. Koscielak, conducted a traffic stop of the Chrysler 300 for the violation. This stop was conducted at 20XX S. 14th Street (in the City and County of Milwaukee). P.O. Koscielak made contact with the driver and sole occupant, later identified as Tomas GARCIA (DOB XX/XX/1965). GARCIA appeared to have difficulty understanding what P.O. Koscielak was ssaying to him due to a language barrier. GARCIA did not have any identification and verbally identified himself as Jose GARCIA (which I now know to be a fictious name). GARCIA claimed not to know his street name and claimed that his friend let him borrow the car. GARCIA was told to stay in the car while PO. Koscielak returned to her squad to contact a Spanish-speaking officer. After approximately two minutes, while P.O. Koscielak was still in her squad, GARCIA exited the Chrysler 300, feigned as if he was having a medical problem, and then fled on foot. P.O. Koscielak ordered GARCIA to stop, but he refused and jumped a fence and removed his hoodie as he ran.

12. Nearly simultaneous to the above, P.O. J. Cornejo began to search the abandoned Chrysler 300 for any evidence related to the identity of the driver who had fled from the vehicle. During the search, P.O. Cornejo noted multiple phones and an opened brown box on the rear driver's seat. Upon searching this box, P.O. Cornejo observed what he suspected to be large quantities of suspected controlled substance.

13. After a foot pursuit, GARCIA was taken into custody at 20XX S. 15th

Place, located hiding beneath a porch. The driver was identified as Tomas M. GARCIA (DOB XX/XX/1965). GARCIA was then conveyed for processing.

14. Officers with the Special Investigations Division responded to the scene where the Chrysler was located. and upon observing the substance, based upon training and experience, believed that the substance contained within the box was crystalized methamphetamine.

15. The vehicle search was stopped, and the vehicle frozen for an evidentiary tow to preserve the vehicle in its condition at the time of the discovery of this evidence. Your affiant drafted a search warrant for the vehicle, which was signed by a Milwaukee County Circuit Court Judge.

16. Your affiant and other federal TFOs went to the City of Milwaukee Tow Lot and conducted a search of the Chrysler. Located in the Chrysler, officers recovered a box on the rear passenger seat behind the front driver seat which contained five gallon-size Ziplock bags of a white crystalline substance, suspected to be crystalized methamphetamine. Officers also recovered three cellular devices from the Chrysler. Your affiant later field tested the suspected methamphetamine utilizing Mobil Detect and the substances within all five bags yielded a positive result for methamphetamine. The substances within two of the bags also field positive for the presence of fentanyl.

17. The total weight of the controlled substances with packaging was

8

Case 2:25-mj-00404-SCD   Filed 04/28/25   Page 9 of 10   Document 1

5048.90 grams (specifically, Bag A-1010.60 grams; Bag B-1008.30 grams; Bag C-1013.50 grams; Bag D-1009.80 grams; and Bag E-1006.70 grams). Approximately 2017.30 grams of these substances also field tested positive for fentanyl.

18. A wanted check revealed that GARCIA had a warrant through the Milwaukee County Sheriff's Department, having failed to appear for a felony drug case in 2002.

19. Based on my training and experience in conducting drug investigations and making drug-related arrests, I believe that the quantity of methamphetamine recovered from the vehicle operated by GARCIA is consistent with being possessed with the intent to distribute, and not for personal use. This belief is based, in part, upon the weight and packaging of the methamphetamine.

## CONCLUSION

20. Based on the above information and facts, I submit that there is probable cause to believe that Tomas GARCIA (DOB XX/XX/1965) (a/k/a Tomas GARCIA-MARTINEZ) has violated the laws of the United States including Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) (Possession with Intent to Distribute Controlled Substances), which occurred in the Eastern District of Wisconsin.